# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| NICOLE R. SMITH, *individually and as Personal Representative of the Estate of Dominique Antonio Smith*, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 0:21-cv-02031-DCN-PJG ) |
| STACY CARTER; ERIC FLAVOR; AUDRA WRIGHT; BERNADETTE RICHARDSON; MARQUETTE LUNN; IZELL SIMON, JR.; DELEON MCELVEEN, JR.; WILLIE MAE YOUNG; and SHAIRY LARGENT, | ) **ORDER** ) ) ) ) ) ) |
| Defendants. | ) ) |

This matter is before the court on Magistrate Judge Paige J. Gossett's report and recommendation ("R&R"), ECF No. 51, that the court grant defendants'[1] motion for summary judgment, ECF No. 25. For the reasons set forth below, the court partially adopts and partially departs from the R&R. As a result, the court grants the motion for summary judgment as to all defendants except for Richardson.

## I. BACKGROUND

Dominique Antonio Smith ("Smith") was an inmate of the South Carolina Department of Corrections ("SCDC") at the Palmer Pre-Release Center in Florence, South Carolina ("PPRC"). PPRC houses inmates transitioning to release and allows

---

[1] "Defendants" collectively refer to defendants Stacy Carter ("Carter"); Eric Flavor ("Flavor"); Bernadette Richardson ("Richardson"); Marquette Lunn ("Lunn"); Izell Simon, Jr. ("Simon"); Deleon McElveen, Jr. ("McElveen"); Willie Mae Young ("Young"); and Shairy Largent ("Largent").

1

inmates to work outside the facility during the day. As such, PPRC does not provide on-site medical care, and inmates with significant preexisting medical conditions are not assigned to the facility. Smith, who was transferred to PPRC on July 5, 2018, had no known medical conditions that precluded his assignment to the facility.

On July 26, 2018, Smith complained to the staff at PPRC that he was experiencing chest pains. Largent, a control room officer, radioed Richardson, a sergeant, asking Richardson to report to the control room to meet Smith. Largent also notified Flavor, a lieutenant and Largent's supervisor, about Smith's complaint. Since PPRC did not have a full-time medical staff, Richardson contacted the medical staff at SCDC's Turbeville Correctional Institution ("Turbeville") and was instructed by a nurse there to have Smith transported to a hospital. Young, a corporal, transported Smith to McLeod Hospital thereafter.

At McLeod Hospital, Smith was examined by Dr. Mary Smyrnioudis ("Dr. Smyrnioudis"). Dr. Smyrnioudis diagnosed Smith with chest pain and costochondritis, a condition in which tissue or cartilage in the chest becomes irritated, causing pain that usually goes away on its own time. Dr. Smyrnioudis prescribed Smith ibuprofen to take every six hours to manage the pain. Smith was discharged from the hospital and provided with discharge instructions that stated Smith should seek immediate medical care if, among other things, Smith experienced "increased chest pain or pain that spreads" to other areas of the body, "shortness of breath," or "increasing cough" or "cough[ing] up blood." ECF No. 38-6, Smyrnioudis Aff. at 6. The instructions also noted that such conditions constituted "an emergency," and Smith should get medical help at once if he experienced them instead of seeing if the pain would go away. Id. at 7.

Young transported Smith back to PPRC that evening. Upon returning, Smith told Young "I'm still hurting. I'm hurting worse than I was." ECF No. 25-3, Young Dep. at 21:3–4. Young claims that she relayed that information to Richardson. Id. at 25:3–5. Additionally, under PPRC's policy, Smith was not allowed to keep his discharge instructions at the prison and was supposed to give it to the shift supervisor. Id. at 14:14–18. Young testified that when she and Smith returned, the shift supervisor would have either been Flavor or Richardson. Id. at 16:8–13. Young testified that her own shift was ending, so she "g[a]ve them the paperwork" and clocked out. Id. at 18:1–4.

In the early morning, at around 3:22 a.m. on July 27, 2018, Smith was provided with ibuprofen for his pain. ECF No. 38-7 at 2. At around 4:00 p.m. on that same day, McElveen was informed that Smith was complaining of chest pain and was sweating very profusely. ECF No. 38-3 at 3. McElveen knew that Smith had been examined at McLeod Hospital the previous day but claimed not to know his specific condition. ECF No. 38-3 at 3. McElveen called a nurse at Turbeville, and the nurse informed McElveen that if Smith's conditions worsened, he should be taken to Turbeville for medical attention. Id. At around 11:30 p.m. later that evening, Simon observed Smith coughing up blood. At that point, Smith was transported to Turbeville to be evaluated by the medical staff. A physician at Turbeville ordered that Smith be transported to Tuomey Hospital. On July 28, 2018, at around 3:45 p.m., Smith died at the hospital of suspected respiratory failure, pneumonia, and sepsis.

On July 8, 2021, Nicole R. Smith, individually and as the personal representative of the Estate of Dominique Antonio Smith ("plaintiff"), filed the instant action against defendants. Compl. The complaint alleges a survival claim and a wrongful death claim

3

for (1) a violation of Smith's Fourth[2] and Eighth Amendment rights under 42 U.S.C. § 1983, and (2) a violation of Smith's Fourteenth Amendment due process rights under 42 U.S.C. § 1983. Id. Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C), all pretrial proceedings in this case were referred to Magistrate Judge Gossett.

On June 3, 2022, defendants filed their motion for summary judgment. ECF No. 25. Plaintiff responded to the motion on August 30, 2022, ECF No. 38, and defendants replied on September 6, 2022, ECF No. 42. On December 19, 2022, Magistrate Judge Gossett issued the R&R, recommending that the court grant defendants' motion for summary judgment. ECF No. 51. Plaintiff filed objections to the R&R on January 3, 2023, ECF No. 52, and defendants responded to plaintiff's objections on January 17, 2023, ECF No. 53. As such, the motion is now ripe for the court's review.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the

---

[2] The magistrate judge properly noted and explained why only plaintiff's Eighth Amendment claims are cognizable, and the court adopts the same view. R&R at 6 n.2.

matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id. However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Lab'ys, Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in a magistrate judge's proposed findings. Id.

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.   DISCUSSION

Plaintiff presents two categories of objections. First, plaintiff objects to several of the R&R "factual findings." ECF No. 52 at 1. Then, plaintiff raises two "legal objections" to the R&R: (1) the magistrate judge misapplied the summary judgment standard, and (2) the magistrate judge failed to properly weigh plaintiff's expert affidavit. Id. at 5. Plaintiff's first legal objection necessarily requires a de novo review of certain factual matters in dispute. Thus, for simplicity, the court addresses plaintiff's factual objections where relevant and considers the legal objections in turn.

#### A. Application of Summary Judgment Standard

In what is labeled Objection No. 8, plaintiff argues that the magistrate judge failed to view the facts in the light most favorable to plaintiff and did not draw all reasonable inferences in plaintiff's favor. ECF No. 52 at 5–6. The court first recounts the law on plaintiff's Eighth Amendment claim before considering the evidence on the record de novo.

With respect to medical care, a prisoner in a § 1983 case or Bivens action "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The claim is cognizable "whether the indifference is manifested by prison doctors in their response to the

6

prisoner's needs or by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999); see also Whitley v. Albers, 475 U.S. 312, 319 (1986) (holding that deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety").

To prevail on an Eighth Amendment deliberate indifference claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). Under the first element, a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted). The R&R did not address—and the parties appear not to dispute—whether Smith's condition was an objectively serious medical condition. Instead, the R&R focused on whether defendants were subjectively aware of the seriousness of Smith's condition. See, e.g., R&R at 9.

Under that second element, an officer is deliberately indifferent only when he "knows of and disregards" the risk posed by the serious medical needs of the inmate. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Fourth Circuit has identified two aspects of an official's state of mind that must be shown to satisfy the subjective component. First, actual knowledge of the risk of harm to the inmate is required. Iko,

7

535 F.3d at 241 (citing Young v. City of Mt. Ranier, 238 F.3d 567, 575–76 (4th Cir. 2001)); see also Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("It is not enough that the officers should have recognized [a substantial risk of harm]."). A factfinder may conclude that an officer knew of a substantial risk from the very fact that the risk was obvious, but it is not enough that a reasonable officer would have found the risk to be obvious. Parrish, 372 F.3d at 303 (citation omitted). Absent direct evidence of knowledge, "the risk of injury must be so obvious that the fact-finder could conclude that the [officer] did know of it because he could not have failed to know of it." Id. (internal quotation marks and citation omitted, and alteration and emphasis in original). Second, the officer "must also have 'recognized that his actions were insufficient' to mitigate the risk of harm to the inmate arising from [the inmate's] medical needs." Iko, 535 F.3d at 241 (citing Parrish, 372 F.3d at 303) (emphasis in original). A factfinder may conclude that the official's response to a perceived risk was so patently inadequate as to justify an inference that the official actually recognized that his response to the risk was inappropriate under the circumstances. Parrish, 372 F.3d at 303.

In the R&R, the magistrate judge properly noted that neither of the parties in the original briefs analyzed deliberate indifference for each defendant individually; instead, the parties contested whether the defendants as a collective had direct knowledge about Smith's chest pains and other severe symptoms. R&R at 7. But "[i]n analyzing the subjective component, a district court should consider each defendant's state of mind individually, not collectively." Glombowski v. Beardslee, 2014 WL 6686599, at *3 (W.D. Mich. Nov. 26, 2014) (citing Bishop v. Hackel, 636 F.3d 757, 766 (6th Cir. 2011)). The magistrate judge ultimately determined that each defendant did not act with

subjective deliberate indifference. In the objections, plaintiff focuses on the knowledge of Young and Richardson. See, e.g., ECF No. 52 at 5 ("This evidence was sufficient to defeat summary judgment as to Young and Richardson under the applicable standard."). To the extent plaintiff objects to the magistrate judge's findings regarding the other defendants, such objections are conclusory and only necessitate a review for clear error. The court finds no such clear error in the R&R's analysis and adopts the R&R as to defendants Carter, Wright, Flavor, Lunn, Simon, McElveen, and Largent. Accordingly, the court considers plaintiff's objections as they relate to defendants Young and Richardson below.

### 1. Young

Plaintiff argues in her objections to the R&R that Young, who was the one that transported Smith to and from McLeod Hospital on July 26, 2018, knew that Smith should have returned to the hospital if he had worsening pain but failed to secure treatment for Smith when he began experience chest pains upon returning to PPRC. Specifically, plaintiff directs the court to the following facts garnered from Young's deposition:

(1) Dr. Smyrnioudis told Young that if Smith "fe[lt] worse" or "exhibit[ed] any additional symptoms, [] he needed to come back [to the hospital]," Young Dep. 15:16–21;

(2) Young was given Smith's discharge instructions at some point, and upon returning, she "gave [the paperwork] to Sergeant Richardson," id. at 27:14–16;[3]

---

[3] Young's testimony on this point is somewhat inconsistent. Earlier in the deposition, Young was asked whether she "ever ha[d] possession" of the paperwork, to which she replied, "No, ma'am." Young Dep. at 14:19–20. Young also initially testified that she was unsure which of Flavor or Richardson was on shift at the time she and Smith returned from the hospital, and simply stated that she "gave them the paperwork." Id. at 18:1–4 (emphasis added). Nevertheless, the court agrees that the testimony reflected in

9

    (3) Smith told Young that he felt like he was "hurting a little bit worse than I was [before]," id. at 24:12–14;

    (4) Young knew that Smith was being processed upon returning so he could be placed "back in the count," id. at 24:17–20.

See also ECF No. 52 at 5.

Upon a de novo review, the court agrees that the R&R's rendition of the facts requires at least some modification. The R&R stated that the record was unclear about what happened to the discharge instructions and that "Young [herself] never possessed them." R&R at 8. The R&R also stated that there was no evidence that any defendants were made aware that a doctor had instructed Smith to seek additional medical attention if his conditions worsened. As reflected above, Young's deposition testimony—certainly when viewed in the light most favorable to plaintiff—suggests that Young in fact had possession of the discharge instructions and knew that Smith should have returned to McLeod Hospital if he experienced worsening symptoms. In this respect, the court has addressed plaintiff's Factual Objections Nos. 1,[4] 4,[5] and 6[6] and resolves them in plaintiff's favor.

---

fact number two above, id. at 27:14–16, is the version that is most favorable to plaintiff as the non-movant.

[4] Under Objection No. 1, plaintiff objects to the R&R's statement that "the record does not show whether Smith's discharge instructions were provided to a supervisor or whether any officers were made aware of the information in the discharge instructions." R&R at 3.

[5] Under Objection No. 4, plaintiff objects to the R&R's statement that "the record is devoid of any evidence that the defendants were made aware that a doctor instructed Smith to seek medical attention if his conditions worsened." Id. at 8.

[6] Under Objection No. 6, plaintiff objects to the R&R's statements that "there is no evidence in the record that Richardson received the discharge instructions" and that "Richardson was made aware that Smith's condition required further hospitalization." Id. at 9.

Even so, the court does not find that the factual clarifications alter the outcome as to Young. Despite reaching the factual conclusions above, the magistrate judge proceeded to assume as true that defendants "all had direct knowledge that Smith was experiencing chest pain and other symptoms, and that his condition deteriorated after he returned from his original visit to the hospital." Id. at 7. As the magistrate judge explained, however, "mere knowledge of Smith's condition is insufficient to show that [] defendants . . . deliberately or recklessly disregarded a substantial risk of harm." Id. (citing Farmer, 511 U.S. at 837).

The distinction between mere knowledge of a condition and reckless disregard of a serious medical need is a critical difference as it relates to Young. Notably, a prison official is deliberately indifferent if she recognized that her actions "were insufficient to mitigate the risk of harm to the inmate." Iko, 535 F.3d at 241 (internal quotation marks and citation omitted, and emphasis in original). Many courts have thus determined that a prison official does not act with deliberate indifference—even when he or she is aware of a substantial risk of harm—where the official communicates the information to a supervisor or otherwise acts to the limits of his or her authority. See, e.g., Watts v. Harris, 2019 WL 7040603, at *5 n.5 (D.S.C. Oct. 22, 2019) (finding that a prison van driver did not exhibit deliberate indifference when he (1) radioed his supervisor to alert him that the plaintiff was reporting that he needed medical care, and (2) escorted the plaintiff to medical area, thus "ending [his] involvement with [the plaintiff]"); Williams v. Calderon, 2008 WL 4937004, at *10 (E.D. Cal. Nov. 17, 2008) (explaining that even if the defendant-officer had overheard a radiologist state that the plaintiff suffered from atrophy in his leg, there was no evidence indicating that the officer "should have or could

have taken any action regarding [the plaintiff's] medical condition"); Sowell v. Greg S., 2013 WL 6698672, at *1 (N.D. Cal. Dec. 19, 2013) (concluding that two jail nurses did not act with deliberate indifference for failing to provide proper medical care where they were solely responsible for performing the plaintiff's intake evaluation and providing the report to supervisors); cf. Rayburn v. Blue, 154 F. Supp. 3d 523, 531 (W.D. Ky. 2015) (noting that the plaintiff had leave to amend the complaint to add the defendants who he alleged had failed to forward the plaintiff's requests to be seen by medical staff).

Here, even in the light most favorable to plaintiff, Young's testimony reveals that she did all that she was required to do such that she could not have been subjectively aware that her response to the risk was patently inadequate. To the extent that Young received the discharge instructions, she also testified that it would have been the shift supervisor's ultimate responsibility to ensure that the paperwork went to the nurse. See Young Dep. 14:16–18 ("[T]he supervisor gets it and put[s] it in the nurse box so the nurse can look at it once they come over[.]"). By delivering the paperwork, Young subjectively believed she had fulfilled her responsibilities for getting it to the person who would determine what care to administer. Id. at 30:24–31:6. Indeed, Young testified that upon returning to PPRC, her shift was ending and she could not have driven Smith back to the hospital. Id. at 26:6–12. It is difficult to imagine what more Young could have done after she (per her testimony) informed Richardson about Smith's condition under the belief that Richardson would take action. Id. at 26:13–17. Therefore, although the court agrees that viewed in the light most favorable to plaintiff, Young knew about Smith's pain and knew that he should have returned to the hospital upon feeling worse, the fact does not ultimately require a departure from the R&R as it relates to Young.

### 2. Richardson

The court reaches a different conclusion on the subjective component of deliberate indifference as it relates to Sergeant Richardson. Based on the same evidence described above, the court draws the inference that Young physically handed Richardson the discharge papers and told Richardson that Smith was "feeling worse than he just was."[7] Id.; id. at 27:14–16. While that may have been the extent of Young's ability to respond to Smith's serious need for medical care, the same cannot be said of Richardson. Again, Young's deposition testimony suggests that Richardson—the shift supervisor at the time—would have been responsible for ensuring the discharge notes got to the nurse and, more broadly, identifying whether Smith would need to return to the hospital. See id. at 14:16–18, 30:24–31:6. After Young allegedly handed the papers to Richardson, the paper trail runs cold, meaning that while there is no evidence Richardson failed to deliver the papers to another supervisor, the inference in plaintiff's favor must be that Richardson did not do so. Notably, neither party includes deposition testimony from Richardson (assuming she was even deposed). A reasonable juror could ultimately conclude that Richardson exhibited deliberate indifference to Smith's serious medical condition by delaying medical attention. A reasonable juror could further conclude that the delay caused Smith to be belatedly transported to Turbeville's medical center in the evening of

---

[7] Viewed in the light most favorable to plaintiff, Richardson was informed that Smith had "worsening" chest pains, not just continuing chest pains. For that reason, defendants' argument in their response to the objections—that defendants had a right to rely on the medical professionals at McLeod Hospital, ECF No. 53 at 6—cannot be resolved in defendants' favor at the summary judgment stage. The discharge instructions stated Smith should seek medical attention if he experienced "worsening symptoms." Smyrnioudis Aff. at 7. A reasonable juror could conclude that Richardson should have understood that Smith needed medical attention based on his symptoms, even if Richardson did not necessarily know Smith had been diagnosed with costochondritis.

July 27 only after Smith began coughing up blood—when in fact Richardson had already known since the evening of July 26 that Smith was experiencing worsening pain.[8]

Accordingly, the court departs from the R&R in this narrow respect and denies defendants' motion for summary judgment as to Richardson.

### 3. Qualified Immunity

Given that the court departs from the R&R in concluding that a genuine dispute of material fact exists as to whether Richardson was deliberately indifferent to a serious medical need, the court finds it prudent to turn to one of defendants' arguments in response to the objections. Although the magistrate judge did not address the issue, defendants argue that they are also entitled to qualified immunity. ECF No. 53 at 8–9.

Under the doctrine of qualified immunity, law enforcement officers performing discretionary duties "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court laid out a two-step process for resolving a qualified immunity claim by a government official. First, the court must decide whether the facts, "[t]aken in the light most favorable to the party asserting the injury," make out a violation of a constitutional right. Id. at 201. Second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. Id.

---

[8] The court's conclusion here resolves Objection Nos. 2, 5 and 7 in plaintiff's favor, and the court need not review them again in detail.

The court denies summary judgment on the basis of qualified immunity as it relates to Richardson. Taking the evidence in the light most favorable to plaintiff, there are triable issues of fact regarding whether Richardson was deliberately indifferent to Smith's serious medical needs. Smith's rights in this regard were "clearly established" at the time of the alleged misconduct. See Scinto v. Stansberry, 841 F.3d 219, 236 (4th Cir. 2016) ("A prisoner's right to adequate medical care and freedom from deliberate indifference to medical needs has been clearly established by the Supreme Court and this Circuit since at least 1976 and, thus, was clearly established at the time of the events in question."); see also Tarashuk v. Givens, 53 F.4th 154, 163 (4th Cir. 2022) (rejecting an argument that Scinto is no longer good law). As such, the court denies summary judgment on the basis of qualified immunity.

### B. Expert Report

Finally, the court turns to plaintiff's second legal objection, labeled Objection No. 9. Plaintiff argues that summary judgment is precluded because plaintiff included an expert affidavit from James Aiken ("Aiken"). Plaintiff partially misstates the law on this issue. Citing a Fourth Circuit case, plaintiff argues that even if the court determines that an expert report is devoid of detail or factual allegations that sustain its conclusions, granting summary judgment is still premature in light of the report. ECF No. 52 at 8 (citing M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F. 2d 160, 165 (4th Cir. 1992)). But that recitation does not capture the nuance of the holding in M & M. There, the court determined that a district court may err if it grants summary judgment after completely excluding an expert report under the Federal Rules of Evidence. M & M, 981 F.2d at 165. Specifically, the court explained that a district court

cannot exclude a report solely because the expert failed to disclose his or her underlying facts and data because, as contemplated by Fed. R. Evid. 705, the court can request the expert to disclose the supporting data separately. Id. at 165–66.

That rule has no application here. At least for purposes of this motion, the court finds that Aiken has sufficiently disclosed the facts underlying his opinion, and the court is not excluding the affidavit wholesale. The issue, however, is that the court finds certain conclusions—perhaps unsurprisingly, those related to defendants that the court has dismissed—are unsupported such that those individual opinions may be discounted. "An expert's professional judgment, standing alone and without any supporting facts or data, is insufficient to support opinion testimony." Antekeier v. Lab'y Corp. of Am., 2018 WL 3028609, at *1 (E.D. Va. May 1, 2018) (citing Alevromagiros v. Hechinger Co., 993 F.2d 417, 421 (4th Cir. 1993)); see Alevromagiros, 993 F.2d at 421 ("[W]e are unprepared to agree that it is so if an expert says it is so.") (internal quotation marks and citation omitted).

In Aiken's expert conclusions section, Aiken discusses the purported failures of "Defendants" as a collective. ECF No. 38-4, Aiken Aff. at 5–6. But, taking defendant Lunn as just one example, Aiken fails to specifically describe how Lunn, in Aiken's professional opinion, failed to provide Smith with the required level of attention. The only times that Aiken specifically names Lunn is when describing Lunn's inclusion in certain PPRC reports or logs. E.g., id. at 4 ¶ 14. Even in those instances, Aiken is simply describing the information presented in the evidence without additional color. Aiken's conclusion about Lunn and other similarly-referenced defendants may therefore be excluded. See In re C.R. Bard, Inc., 948 F. Supp. 2d 589, 608 (S.D. W. Va. 2013)

("Expert testimony which merely regurgitates factual information that is better presented directly to the jury rather than through the testimony of an expert witness is properly excluded.") (internal quotation marks and citation omitted).

As a result, the court finds that Aiken's opinion about "Defendants" is more accurately construed as an opinion about Richardson, based on the evidence. Aiken opines that "Defendants" failed to "operationally comply with [the] McLeod ER professional medical provider's instructions" after being "forewarned" about the potential need to activate an emergency medical response. Id. at 5. Aiken then opines that "Defendants" had the "authority, responsibility, and [] command authorization" to comply with the McLeod ER instructions but failed to do so. Id. at 5–6. These alleged failures may, at best, only be properly attributed to Richardson. As the court thoroughly explained before, the record evidence provides that only Young and Richardson actually received the discharge instructions from McLeod Hospital. Between those two defendants, only Richardson had the ability and authority to follow through with the instructions. Even when viewed in the light most favorable to plaintiff, Richardson is the only defendant that neatly fits within the expert's conclusions. Aiken does not otherwise explain how Carter, Flavor, Wright, Lunn, Simon, McElveen, and Largent should have been aware of the specific medical discharge instructions, and the court has no reason to find otherwise. Therefore, the court finds that the expert report confirms, not refutes, the conclusions of the court.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS IN PART** and **DEPARTS IN PART** from the R&R and **GRANTS IN PART** and **DENIES IN PART** defendants'

17

motion for summary judgment. Defendants Carter, Flavor, Wright, Lunn, Simon, McElveen, Young, and Largent are dismissed from this action.

**AND IT IS SO ORDERED.**

                                    **DAVID C. NORTON**
                                    **UNITED STATES DISTRICT JUDGE**

**March 13, 2023**
**Charleston, South Carolina**